UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:10-cr-40008 |
| MATTHEW L. MARTIN, | ) ) ) |
| Defendant. | ) |

## O R D E R

This matter is now before the Court pursuant to the Seventh Circuit's limited remand in light of *United States v. Jones*, 132 S. Ct. 945 (2012). In its Order (ECF No. 34), the Seventh Circuit directed this Court to consider two questions: (1) whether Defendant Matthew Martin's ("Martin") plea agreement allows him to challenge the evidence against him under *Jones*; and, if so, (2) whether *Jones* justifies the suppression of the evidence against him. Martin seeks to suppress all physical evidence seized from the interior of his motor vehicle following a traffic stop on November 23, 2009 and all written and oral statements, communications, admissions, and confessions which he allegedly made while in custody at the Warren County Jail on November 23, 2009. As detailed below, the Court finds that although Martin's plea agreement does preserve his right to challenge this Court's denial of his motion to suppress, *Jones* does not justify the suppression of the evidence against him. Accordingly, Martin's Supplemental Motion to Suppress Evidence (ECF No. 36) is DENIED.

**FACTUAL BACKGROUND**

The facts of this case arise out of the investigation of a November 9, 2009, bank robbery that took place in Burlington, Iowa. Over the course of their robbery investigation, Iowa police

1

examined video surveillance footage from the bank and eyewitnesses' descriptions of the bank robbers. (*See* Motion to Suppress Transcript (hereinafter "Tr.") at 181-2, ECF No. 16.) An eyewitness identified Daryl Jackson ("Jackson") as one of the bank robbers. (Tr. at 182.) Police spoke with Jackson who, in turn, implicated Martin in the robbery, claiming that Martin had contacted him weeks before about the bank robbery and suggested what specific clothes to wear during the heist. *Id.* These clothes – construction garb – matched eyewitnesses' description of the bank robbers. *Id.* Notably, Martin told Jackson that the gun they would use was located under the hood of his red sport utility vehicle. *Id.* Police developed additional information regarding the Burlington, Iowa hotel where Jackson had rented a room and on November 19, 2009, hotel staff alerted the police that Martin had returned. *Id.* at 183-4. That day, police placed a GPS tracking device on Martin's grey Monte Carlo in order to conduct surveillance. *Id.* at 184. On November 23, 2009, police tracked Martin's Monte Carlo heading eastbound in Illinois and Deputy Askew ("Askew") of the Henderson County, Illinois Sheriff's Department, Detective Chiprez ("Chiprez"), and Detective Hamma ("Hamma") of the Burlington, Iowa Police Department, initiated a traffic stop. *Id.* and (ECF No. 36 at 2.) Deputy Askew and Detectives Chiprez and Hamma searched both the interior of the vehicle and under the hood. (*Tr.* at 185-6) and (ECF No. 36 at 4.) Officers found a gun under the hood of the car; this was a different gun than the one Jackson had described. (*Tr.* at 187.)

## PROCEDURAL BACKGROUND

On January 28, 2010, Martin was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g) and 924(a)(2). On May 20, 2010, Martin filed his Motion to Suppress (ECF No. 10) wherein he sought to suppress the abovementioned evidence and argued "that all of the evidence that is the subject of this motion was seized and obtained from the

Defendant in violation of the Defendant's rights secured under the Fourth and Fifth Amendments to the United States Constitution." (ECF No. 38 at ¶11.) Martin did not challenge the placement or use of the GPS device but he did argue that Deputy Askew's and Detectives Chiprez's and Hamma's "initial stop… and their resultant seizure, detention and arrest of [Martin] were without a warrant, without [Martin's] consent, and without probable cause or reasonable suspicion that [Martin] had committed or was committing any criminal or motor vehicle offense." (ECF No. 10 at ¶4.) At the July 27, 2010, Motion to Suppress hearing, this Court found there was probable cause for Martin's arrest (*Tr.* at 184-5), that it was reasonable for the officers to believe Martin's vehicle contained evidence of the bank robbery, and accordingly denied Martin's Motion to Suppress. *Id.* at 186-7.

On October 15, 2010, Martin entered a blind plea of guilty conditioned upon his Reservation of Issues for Appeal. Therein, Martin pleaded guilty to the charged offense subject to the condition that he be allowed to challenge this Court's denial of his Motion to Suppress. (ECF No. 17.) On March 28, 2011, the Court sentenced Martin to 80 months and on December 30, 2011, the Seventh Circuit affirmed the Court's judgment. Martin then filed a timely petition for rehearing or rehearing en banc, which remains pending before the Seventh Circuit.

On January 30, 2012, shortly after the *Jones* decision was announced, Martin moved for a limited remand and stay of his appellate proceedings pending this Court's consideration of his case in light of *Jones*. On May 14, 2012, the Seventh Circuit issued a limited remand so that this Court could consider: 1) whether Martin's plea agreement allows him to challenge the evidence against him under *Jones*; and, if so, 2) whether *Jones* justifies the suppression of the evidence against him.

1. **Martin's plea agreement is sufficiently framed to allow him to assert his Fourth Amendment challenge to the evidence seized from him under *Jones*.**

Rule 11(a)(2) allows a defendant, with the consent of the government and approval of the court, to enter a conditional plea of guilty which "reserv[es] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Fed. R. Crim. P 11(a)(2). This rule operates as a "narrow exception to the ordinary rule that a defendant who pleads guilty cannot appeal his conviction or challenge the sufficiency of the indictment on appeal." *United States v. Dimitrov*, 546 F.3d 409, 416 (7th Cir. 2008). To preserve an issue for appeal, a conditional plea must "precisely identify which pretrial issues the defendant wishes to preserve for review." *United States v. Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009). However, the Seventh Circuit has also indicated that in certain situations the language used in a plea agreement must be "general enough" to overcome a waiver argument. *See United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997) (finding that Defendant's plea agreement, which "reserve[d] the right to seek review of the court's order denying the defendant's motion to suppress the evidence seized from his person" was general enough to allow Defendant to argue the propriety of his *Terry* stop. The Court noted that this was especially true because the issue was argued similarly before the district court.) Written plea agreements are interpreted "according to general principles of contract law" and, accordingly, the Court "look[s] to extrinsic evidence of the parties' intentions… for example, in a plea colloquy – only when the written contract is ambiguous." *Kingcade*, 562 F.3d at 797.

The Government claims that because Martin "did not 'precisely identify' the GPS installation and monitoring issue as one he wished to reserve for appeal" he has waived it. (ECF No. 38 at 3 (citing *Kingcade*, 562 F.3d at 797)). In support of its position, the Government argues that Martin's preservation argument fails because 1) Martin's conditional plea only

4

reserved his ability to appeal this Court's order denying his motion to suppress; or, alternatively 2) even if the plea agreement is read to encompass the Fourth and Fifth Amendments[1] as legal bases for suppression, Martin's boilerplate language failed to "precisely identify" the issues he intended to reserve for appeal.

Martin responds, stating that "'waiver' is 'an intentional relinquishment of a known right or privilege'" (ECF No. 39 at 2 (citing *United States v. Valenzuela*, 150 F.3d 664, 667 (7th Cir. 1998)) and that moreover, courts construe waiver principles liberally in favor of the defendant. *Id.* (citing *United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005)). Martin concedes that he did not raise the GPS issue before this Court or in his primary brief before the Seventh Circuit but argues that his reservation of issues for appeal – which references his motion to suppress[2] – is sufficient to allow him to assert his Fourth Amendment challenge to the evidence seized from his motor vehicle under *Jones*. Furthermore, Martin argues that the Supreme Court's decision in *Jones* amounts to a new rule of constitutional criminal procedure and Fourth Amendment jurisprudence and that, accordingly, *Griffith v. Kentucky* 479 U.S. 314 (1987) requires the new rule to be applied to his not-yet-final appeal. Martin claims he should be allowed to raise the GPS issue "not by virtue of any language contained in the defendant's reservation of issues of appeal, but by virtue that [Martin's] case was still pending, and was not final, on the date that the Supreme Court issued its landmark ruling in *Jones*." (ECF No. 39 at 5.)

The Seventh Circuit explicitly found that *Jones'* constitutional rule applies retroactively to Martin's case because his appeal is not yet final given his unresolved petition for rehearing. *See* ECF No. 34. In order to determine whether Martin's conditional plea reserved the right to

---

[1] As described in Martin's "Legal Bases for Suppression" section in his Motion to Suppress (ECF No. 10.)
[2] In his Motion to Suppress, Martin claimed that his Fourth and Fifth Amendment rights were violated and he challenged the officers' "stop, seizure, arrest and detention of the defendant's person, and the unlawful search of the defendant's motor vehicle." (ECF No. 10 at ¶12.)

challenge the evidence against him, the Court turns to the language of his Reservation of Issues for Appeal: "On July 27, 2010, United States Judge Michael M. Mihm denied the defendant's motion to suppress evidence. In pleading guilty to the Indictment, the defendant specifically reserves his right to appeal the District Court's Order of July 27, 2010, denying the defendant's motion to suppress evidence." (ECF No. 18 at 1.)

It is this Court's finding that at the time Martin's Motion to Suppress (ECF No. 10) was before it there was no good faith basis for Martin to argue the constitutionality of the GPS issue. Martin claims that "a Westlaw search of Eighth Circuit Court of Appeals, and Iowa Appellate and Supreme Court cases reveals no case authorities in those jurisdictions that authorize warrantless GPS monitoring of vehicles [during the relevant time period]." (ECF No. 37 at 11). However, on November 19, 2009 – when the officers attached and then monitored the GPS device on Martin's vehicle – the only Circuit court to consider the question had concluded that police did not run afoul of the Fourth Amendment warrant requirement by monitoring a GPS tracking device on a car in public. *See United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) (relying on *United States v. Knotts*, 460 U.S. 276 (1983) to find using a GPS tracking device to monitor an individual's movements in his vehicle over a prolonged period is not a search.) Furthermore, the Court finds that Martin litigated every conceivable Fourth Amendment claim in the body of his Motion to Suppress and that his Reservation [#17] was sufficiently worded to capture the newly created rule of criminal procedure announced in *Jones*. For example, Martin characterized his argument as a Fourth Amendment constitutional challenge and argued "that all physical evidence seized from the Defendant's motor vehicle… were the fruits of the unlawful stop, seizure, arrest, and detention of Defendant's person, and the unlawful search of the Defendant's motor vehicle, and therefore must be suppressed." (ECF No. 10 at ¶12.)

Martin's Reservation of Issues "did not require [him] to present his arguments in exactly the same way and with the same emphasis that he gave them [in this Court.]" *United States v. Sarraj*, 665 F.3d 916, 920 (7th Cir. 2012). Rather, the Reservation left Martin free to select and assert on appeal any argument which he adequately presented to this Court. As indicated above, the Court is satisfied that because Martin argued the full panoply of Fourth Amendment claims in his Motion to Suppress, because *Griffith* requires newly-created criminal procedure rules to be applied retroactively to cases that have not yet reached final jugment, and because Martin's Reservation reserved the right to appeal from this Court's Order denying his motion to suppress generally, he can now bring his suppression argument under *Jones*.

Moreover, the Court notes that because its review of the Reservation is guided by contractual norms, the Government's characterization of Martin's reservation language as overly broad cuts both ways. Both the Government and Martin were parties to that contract and the Government knowingly agreed to this "boilerplate" language. Martin preserved his right to challenge this Court's denial of his motion to suppress and "did not limit that appeal to a precise replay of district court advocacy and reasoning." *Sarraj*, 665 F.3d at 920. The Court now turns to the merits of Martin's arguments that *Jones* requires the suppression of the evidence against him.

### 2. *Jones* does not justify the suppression of the evidence against Martin.

In its landmark decision, the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Jones*, 132 S. Ct. at 949 (footnote omitted). The Court did not consider the Government's alternative argument that even if the attachment and use of the GPS device was a search, it was justified by reasonable suspicion and probable cause. In the instant case, the

Government concedes that, under *Jones*, the installation and monitoring of a GPS devise on a vehicle constituted a search but argues that the officers' actions were justified by reasonable suspicion and probable cause. *See* (ECF No. 38 at 9.)  However, at the July 28, 2012, status conference the Government conceded that its stronger arguments were related to the issues of good faith reliance and attenuation.  Accordingly, the parties focused their arguments on the following issues: (1) whether the good faith exception to the exclusionary rule should apply given the officers' reliance on the law regarding GPS usage in 2009 and; (2) whether the officers' usage of the GPS was sufficiently attenuated to make suppression unwarranted. The Court will now address these two questions.

> **a. Exclusion is inappropriate where, as here, the officers acted reasonably and in good faith on then-existing Fourth Amendment precedent.**

The Supreme Court's decision in *United States v. Davis*, 131 S. Ct 2419 (2011) sets forth the relevant framework for determining when an officer's good faith reliance on then-existing precedent operates negates the exclusionary rule.  In that case, the Court declined to apply the exclusionary rule, holding "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 2423-4.  Moreover, the Court found "exclusion is not a personal constitutional right… designed to redress the injury occasioned by an unconstitutional search… [rather] the rule's sole purpose… is to deter future Fourth Amendment violations." *Id.* at 2426. (citations excluded).  The Court proceeded to describe the rigorous cost-benefit analysis the exclusionary rule requires, finding "real deterrent value is a necessary condition for exclusion, but it is not a sufficient one." *Id.* at 2427. (citing *Herring v. United States*, 555 U.S. 135, 144 (2009) (when police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs); *United States v. Leon*, 468 U.S. 897, 909

(1984) (the exclusionary rule does not apply when police act with an objectively "reasonable good-faith belief" that their conduct is lawful); *cf. Herring* at 137 (the exclusionary rule's core concerns are not raised when police conduct involves only simple, "isolated" negligence.)

In the instant case, at the time the officers affixed the GPS to Martin's car and then monitored it, there was no binding appellate precedent in the Eighth Circuit addressing the constitutionality of GPS monitoring. The Supreme Court *had* held that merely tracking a vehicle on public streets via beeper technology "was neither a search nor a seizure within contemplation of the Fourth Amendment." *Knotts* 460 U.S. at 285. (internal citations omitted). However, the only circuit which had addressed the issue of GPS use and monitoring – the Seventh – largely relied on the Supreme Court's reasoning in *Knotts* to find that the use of a GPS device did not implicate the Fourth Amendment. *Garcia*, 474 F.3d at 997 ("But GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking.")

The Court finds the district court's reasoning in *United States v. Leon* to be persuasive, wherein that court found DEA agents' monitoring of a GPS tracking device to be objectively reasonable and rooted in their good faith understanding of then-existing Fourth Amendment jurisprudence, despite the lack of binding appellate authority. *United States v. Leon*, 2012 U.S. Dist. LEXIS 42737 (D. Haw. Mar. 28, 2012) (footnotes omitted) ("Although the technology changed, the agents were certainly justified in relying on *Knotts*' rationale in determining that no warrant was required. And the sole circuit court to consider the use of a GPS device prior to 2009 found no Fourth Amendment violation, even considering the change in technology."); *but see United States v. Lee*, 2012 U.S. Dist. LEXIS 71204 (E.D. Ky. May 22, 2012) ("Limiting the good-faith exception to binding appellate precedent also promotes the essential interest in readily

administrable rules to govern police… [whereas] expanding the exception to non-binding authority raises a host of questions. How many circuits must support a practice before an officer can rely on it in good faith?") In view of the landscape of then-existing Fourth Amendment jurisprudence, it is this Court's ruling that the officers' attachment and monitoring of the GPS device on Martin's car from November 19, 2009 to November 23, 2009 does not beget the harsh sanction of exclusion. Indeed, the officers' actions were not deliberate, reckless, or grossly negligent but were based on an objectively reasonable good faith belief that their conduct was lawful. Therefore, it follows that if the purpose of the exclusion sanction is to deter deliberate, reckless, or grossly negligent police conduct violative of recognized constitutional rights, that purpose would not be accomplished in the instant case.

The good faith analysis gives rise to an ironic situation. Just as Martin characterizes the *Jones* decision as "landmark" and "groundbreaking" (ECF No. 39 at 2) in arguing he ought not be penalized for not foreseeing *Jones* and claiming that his "written reservations of issues for appeal is broad enough to allow him to assert a Fourth Amendment [*Jones*] challenge" *Id.* at 5, so, too, were the officers in this case entitled to rely upon their objective good faith belief that their conduct was constitutional given the state of Fourth Amendment jurisprudence in 2009. Moreover, although not directly relevant to the officers' objectively reasonable good-faith belief, the Eighth Circuit found that the installation and subsequent monitoring of a GPS device was constitutional one day after Martin filed his Motion to Suppress in a May 21, 2010 decision. *United States v. Marquez*, 605 F.3d 604, 609-610 (8th Cir. 2010). In doing so, the Eighth Circuit relied on both *Knotts* and *Garcia*. This subsequent ruling further supports the notion that the officers in the instant case acted with an objectively reasonable good-faith belief. *See United States v. Leon*, 2012 U.S. Dist. LEXIS 42737 (D. Haw. Mar. 28, 2012) (wherein the court held it

would be "hard-pressed to place culpability on the agents for their actions in 2009 when, one year later… the Ninth Circuit relied on *Knotts* to conclude that the prolonged use of a GPS tracking device did not violate the Fourth Amendment.")  Accordingly, because the deterrent benefits of suppression would not outweigh its heavy costs, because during the relevant time period the officers acted with an objectively good-faith belief that their conduct was lawful, and for the reasons stated above, the Court finds that exclusion is inappropriate in this case.

      **b.  Whether the evidence was sufficiently attenuated from the search of Martin's vehicle is irrelevant.**

Martin argues that there was a direct and proximate connection between the officers' use of the GPS device and their subsequent search of Martin's vehicle.  In doing so, Martin claims that an evidentiary hearing is necessary to determine whether the evidence seized was so attenuated to make suppression of the evidence unwarranted because "issues such as probable cause, reasonable suspicion, and the attenuation doctrine are all fact-intensive." (ECF No. 39 at 6.)  The Government claims that the evidence should not be suppressed because the GPS data did not "advance the probable cause or reasonable suspicion calculus." (ECF No. 38 at 12-3.)  As support, the Government further cites this Court's July 27, 2010 ruling that the officers' initial vehicle stop was justified by probable cause to arrest Martin for bank robbery.  However, the Court determines that it need not address the attenuation issue because it has already concluded that the exclusionary rule does not apply to the officers' good faith installation and monitoring of the GPS device.

## CONCLUSION

For the aforementioned reasons, the Court finds that while Martin's plea agreement does preserve his right to challenge this Court's denial of his motion to suppress, *Jones* does not

justify the suppression of the evidence against him.  Accordingly, Martin's Supplemental Motion to Suppress [#36] is DENIED.

Entered this <u>18th</u> day of September, 2012.

  /s/  Michael M. Mihm
Michael M. Mihm
United States District Judge